UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPRING STREET PARTNERS - IV, L.P., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. _____ |
| DOUGLAS K. LAM and DKL&DTL FAMILY MANAGEMENT, L.L.C., | ) ) ) ) | |
| Defendants. | ) | |

PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Spring Street Partners – IV, L.P. ("Spring Street") files this Original Complaint, complaining of Douglas K. Lam ("Douglas Lam") and DKL&DTL Family Management, L.L.C. ("DKL&DTL") and would respectfully show the Court the following:[1]

I. PARTIES

1.      Plaintiff Spring Street Partners – IV, L.P. is a Delaware limited partnership with its principal place of business in Beverly Hills, California.

2.      Defendant Douglas K. Lam is an individual who can be served with process at his place of residence, 9707 Chipstead Circle, Spring, Texas 77379.

3.      Defendant DKL&DTL Family Management, L.L.C. is a Texas limited liability company that can be served through its registered agent, Stephen E. Menn, 3050 Post Oak Blvd., #1750, Houston, Texas 77050.[2]

---

[1]      Douglas Lam and DKL&DTL, are collectively referred to herein as the "Defendants."

## II. JURISDICTION AND VENUE

4.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Spring Street's claims occurred in this District and Division.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this civil action is between citizens of different states.  More specifically, Plaintiff Spring Street Partners – IV, L.P. is a Delaware limited partnership with its principal place of business in Beverly Hills, California.  Defendant Douglas K. Lam is a Texas resident and citizen of Texas.   Defendant DKL&DTL Family Management, L.L.C. is a Texas limited liability company with its principal place of business in Texas.  Additionally, and as demonstrated in this complaint, the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      This Court has jurisdiction over Douglas K. Lam because Mr. Lam is a Texas resident.

7.      This Court has jurisdiction over DKL&DTL Family Management, L.L.C. because DKL&DTL Family Management, L.L.C. is a Texas company.

## III. BACKGROUND FACTS

8.      This case arises out of guaranty agreements executed by Douglas Lam to guarantee certain loans made to Bayou City Fish Company ("Bayou") and the notes made by Bayou.  This case also seeks the recovery of fraudulent transfers made by Douglas Lam to, *inter alia*, DKL&DTL.

### The Revolving Credit Note and Guaranty

9.      On or about December 30, 2005, Bayou entered into a loan agreement with Wachovia Bank, N.A. ("Wachovia").  In connection with that loan agreement, Bayou is the

---

[2]      The Plaintiff fully anticipates that, upon further investigation of the facts related to the allegations contained herein, leave to amend this Complaint to add additional Defendants (as likely recipients of fraudulent transfers) will be sought from the Court.

maker of, and Spring Street is now the holder of, that certain promissory note dated December 30, 2005 in the original principal amount of $8,500,000 (the "Revolving Credit Note").

10.    To guaranty the obligations arising under the Revolving Credit Note, Douglas Lam executed an Unconditional Guaranty (the "Unconditional Guaranty).

11.    Pursuant to the terms of the Unconditional Guaranty, Lam "absolutely, irrevocably and unconditionally guarantee[d] to Bank and its successors, assigns and affiliates the timely payment and performance of all liabilities and obligations of [Bayou to Wachovia]. . . .["][3]

12.    On or about December 11, 2006, Wachovia assigned the Revolving Credit Note and Unconditional Guaranty to Spring Street.  On or about December 11, 2006, Wachovia executed an allonge that endorsed the Revolving Credit Note to make said note payable to the order of Spring Street (the "Revolving Credit Note Allonge").

### The Term A Real Estate Note

13.    Bayou is the maker of, and Spring Street is now the holder of, that certain promissory note dated April 23, 2003 in the original principal amount of $652,000 (the "Term A Real Estate Note").

14.    On or about December 11, 2006, Wachovia[4] assigned the Term A Real Estate Note to Spring Street.  On or about December 11, 2006, Wachovia executed an allonge that endorsed the Term A Real Estate Note to make said note payable to the order of Spring Street (the "Term A Real Estate Note Allonge").

---

[3]    *See* Unconditional Guaranty, p. 1.
[4]    The initial holder of the Term A Real Estate Note was SouthTrust Bank.  Wachovia Bank, N.A. is the successor by merger of SouthTrust Bank.

### *The Term B Note and Guaranty*

15.    Bayou is the maker of, and Spring Street is now the holder of, that certain promissory note dated April 1, 2005 in the original principal amount of $124,065.42 (the "Term B Note").

16.    To guaranty the obligations arising under the Term B Note, Douglas Lam executed a Commercial Guaranty (the "Term B Guaranty").

17.    Pursuant to the terms of the Term B Guaranty, Douglas Lam "absolutely and unconditionally guarantee[d] and promise[d] to pay Wachovia Bank, National Association, successor by merger to SouthTrust Bank ("Lender") or its order . . . the Indebtedness of Bayou . . ."[5]   The Term B Guaranty further provides that "The Indebtedness guaranteed by [Lam] includes any and all of [Bayou's] Indebtedness. . . . [to Wachovia]."[6]

18.    On or about December 11, 2006, Wachovia Bank, N.A. assigned the Term B Note to Spring Street.  On or about December 11, 2006, Wachovia executed an allonge that endorsed the Term B Note to make said note payable to the order of Spring Street (the "Term B Note Allonge").

### *The Term C Note and Guaranty*

19.    Bayou is the maker of, and Spring Street is now the holder of, that certain promissory note dated January 27, 2003 in the original principal amount of $203,060.30 (the "Term C Note").

20.    To guaranty the obligations arising under the Term C Note, Douglas Lam executed a Commercial Guaranty (the "Term C Guaranty").

---

[5]    *See* Term B Guaranty, p. 1.
[6]    *See id.*

21.     Pursuant to the terms of the Term C Guaranty, Douglas Lam "absolutely and unconditionally guarantee[d] and promise[d] to pay SouthTrust Bank ("Lender") or its order . . . the Indebtedness . . . of Bayou. . . ."[7]   The Term C Guaranty further provides that "The Indebtedness guaranteed by [Lam] includes any and all of [Bayou's] Indebtedness. . . . [to Wachovia]."[8]

22.     On or about December 11, 2006, Wachovia assigned the Term C Note to Spring Street.  On or about December 11, 2006, Wachovia executed an allonge that endorsed the Term C Note to make said note payable to the order of Spring Street (the "Term C Note Allonge").

### The Term D Note and Guaranty

23.     Bayou is the maker of, and Spring Street is now the holder of, that certain promissory note dated September 10, 2004 in the original principal amount of $54,931 (the "Term D Note").

24.     To guaranty the obligations arising under the Term D Note, Douglas Lam executed a Commercial Guaranty (the "Term D Guaranty").

25.     Pursuant to the terms of the Term D Guaranty, Douglas Lam "absolutely and unconditionally guarantee[d] and promise[d] to pay SouthTrust Bank ("Lender") or its order . . . the Indebtedness . . . of Bayou. . . .[to Wachovia]."[9]   The Term D Guaranty further provides that "The Indebtedness guaranteed by [Lam] includes any and all of [Bayou's] Indebtedness. . . . [to Wachovia]"[10]

---

[7]   *See* Term C Guaranty, p. 1.
[8]   *See id.*
[9]   *See* Term D Guaranty, p. 1.
[10]   *See id.*

26.    On or about December 11, 2006, Wachovia Bank, N.A. assigned the Term D Note to Spring Street.  On or about December 11, 2006, Wachovia executed an allonge that endorsed the Term D Note to make said note payable to the order of Spring (the "Term D Note Allonge").

### The Term E Note and Guaranty

27.    Bayou is the maker of, and Spring Street is now the holder of, that certain promissory note dated January 8, 2004 in the original principal amount of $54,107.55 (the "Term E Note").

28.    To guaranty the obligations arising under the Term E Note, Douglas Lam executed a Commercial Guaranty (the "Term E Guaranty").

29.    Pursuant to the terms of the Term E Guaranty, Douglas Lam "absolutely and unconditionally guarantee[d] and promise[d] to pay SouthTrust Bank ("Lender") or its order . . . the Indebtedness . . . of Bayou. . . ."[11]   The Term E Guaranty further provides that "The Indebtedness guaranteed by [Lam] includes any and all of [Bayou's] Indebtedness. . . .[to Wachovia]."[12]

30.    On or about December 11, 2006, Wachovia Bank, N.A. assigned the Term E Note to Spring Street.  On or about December 11, 2006, Wachovia executed an allonge that endorsed the Term E Note to make said note payable to the order of Spring Street (the "Term E Note Allonge").

### The Term F Note and Guaranty

31.    Bayou is the maker of, and Spring Street is now the holder of, that certain promissory note dated January 31, 2003 in the original principal amount of $69,709.02 (the "Term F Note").

---

[11]    *See* Term E Guaranty, p. 1.
[12]    *See id.*

32.     To guaranty the obligations arising under the Term F Note, Douglas Lam executed a Commercial Guaranty (the "Term F Guaranty").

33.     Pursuant to the terms of the Term F Guaranty, Douglas Lam "absolutely and unconditionally guarantee[d] and promise[d] to pay SouthTrust Bank ("Lender") or its order . . . the Indebtedness . . . of Bayou. . . ."[13]  The Term F Guaranty further provides that "The Indebtedness guaranteed by [Lam] includes any and all of [Bayou's] Indebtedness. . . .[to Wachovia]."[14]

34.     On or about December 11, 2006, Wachovia Bank, N.A. assigned the Term F Note to Spring Street.  On or about December 11, 2006, Wachovia executed an allonge that endorsed the Term F Note to make said note payable to the order of Spring Street (the "Term F Note Allonge").

### The Term G Note and Guaranty

35.     Bayou is the maker of, and Spring Street is now the holder of, that certain promissory note dated June 5, 2003 in the original principal amount of $40,189.74 (the "Term G Note").

36.     To guaranty the obligations arising under the Term G Note, Douglas Lam executed a Commercial Guaranty (the "Term G Guaranty").

37.     Pursuant to the terms of the Term G Guaranty, Douglas Lam "absolutely and unconditionally guarantee[d] and promise[d] to pay SouthTrust Bank ("Lender") or its order . . . the Indebtedness . . . of Bayou. . . ."[15]  The Term G Guaranty further provides that "The

---

[13]     *See* Term F Guaranty, p. 1.
[14]     *See id.*
[15]     *See* Term G Guaranty, p. 1.

Indebtedness guaranteed by [Lam] includes any and all of [Bayou's] Indebtedness. . . . [to Wachovia]."[16]

38.    On or about December 11, 2006, Wachovia Bank, N.A. assigned the Term G Note to Spring Street. On or about December 11, 2006, Wachovia executed an allonge that endorsed the Term G Note to make said note payable to the order of Spring Street (the "Term G Note Allonge").

### The Defaults on the Notes and the Guaranties[17]

39.    The Revolving Credit Note matured and was fully due and payable on May 31, 2006. The principal due and payable under the Revolving Credit Note has not been paid. As of December 31, 2007, *at least* $7,765,021.52 in principal, interest, fees and other obligations owed under the Revolving Credit Note remains due and owing.

40.    On December 23, 2006, a payment of $6,843.32 became due and payable under the Term A Real Estate Note. On January 23, 2007, an additional payment of $6,941.61 became due and payable under the Term A Real Estate Note. Neither of these payments has been made.

41.    On January 1, 2007, a payment of $2,366.92 became due and payable under the Term B Note. This payment has not been made.

42.    On January 15, 2007, a payment of $3,762.53 became due and payable under the Term C Note. This payment has not been made.

43.    On January 10, 2007, a payment of $1,019.04 became due and payable under the Term D Note. This payment has not been made.

---

[16]    *See id.*

[17]    The Revolving Credit Note, the Term A Real Estate Note, and the Term B – G Notes are referred to, collectively, as the "Notes." The Unconditional Guaranty and the Term B – G Guaranties are referred to, collectively, as the "Guaranties."

44.    On January 8, 2007, a payment of $997.87 became due and payable under the Term E Note. This payment has not been made.

45.    On December 28, 2006, a payment of $1,293.08 became due and payable under the Term F Note. On January 28, 2007, an additional payment of $1,293.08 became due and payable under the Term F Note. Neither of these payments has been made.

46.    On January 5, 2007, a payment of $745.88 became due and payable under the Term G Note. This payment has not been made.

47.    On January 12, 2007, Spring Street sent a payment notice to Bayou with attention to Douglas Lam (the "Payment Notice"). The Payment Notice set forth each individual note, its principal balance, rate of interest, maturity date, and amount due.

48.    Because no payments were received from Bayou in response to the Payment Notice, on February 7, 2007, Spring Street notified and made demand on Bayou, with attention to Douglas Lam, for the amounts due and payable under the Notes (the "First Demand Letter"). Not only did Spring Street notify Bayou of the Events of Default, but also notified Bayou of Spring Street's intent to accelerate the Term A Real Estate Note and the Term B – G Notes if Bayou failed to cure the payment defaults. By copy of the First Demand Letter, Douglas Lam, as guarantor, was provided notice of Bayou's payment defaults and Spring Street's demand for payment.

49.    Because Bayou failed to cure the payment defaults in response to the First Demand Letter, on February 21, 2007, Spring Street again notified and made demand on Bayou, with attention to Douglas Lam, for the amounts due and payable under the Notes (the "Second Demand Letter"). In the Second Demand letter, Spring Street again notified Bayou of the Events of Default, and also notified Bayou of Spring Street's acceleration of the Term A Real Estate

9

Note and the Term B – G Notes due to Bayou's failure to cure the payment defaults. By copy of the Second Demand Letter, Douglas Lam, as guarantor, was provided notice of Bayou's failure to cure the payment defaults, Spring Street's acceleration of the Notes, and Spring Street's demand for payment.

50.    Because Bayou failed to pay the amounts due and owing under the Notes in response to the Second Demand Letter, on February 26, 2007, Spring Street notified and made demand on Douglas Lam, as guarantor, for the amounts due and payable under the Notes and Guaranties (the "Third Demand Letter").

51.    Bayou is in default under the Revolving Credit Note because it failed to pay the amounts due and payable after the note matured. After applying all credits, payments, and offsets, as of December 31, 2007, *at least* $7,765,021.52, in principal, interest, fees and other obligations owed under the Revolving Credit Note remains due and owing. As guarantor of the amounts owed by Bayou on the Revolving Credit Note, Douglas Lam is also liable to Spring Street for all amounts owed on the Revolving Credit Note.

52.    Bayou is in default under the Term A Real Estate Note because it failed to make the required payments under the Term A Real Estate Note when due. The Term A Real Estate Note has been accelerated, and after applying all credits, payments, and offsets, the total principal and accrued interest still due and owing on the Term A Real Estate Note as of December 31, 2007 is *at least* $535,498.04. As guarantor of the amounts owed by Bayou on the Term A Real Estate Note, Douglas Lam is also liable to Spring Street for all amounts owed on the Term A Real Estate Note.

53.    Bayou is in default under the Term B Note because it failed to make the required payments under the Term B Note when due. The Term B Note has been accelerated, and after

applying all credits, payments, and offsets, the total principal and accrued interest still due and owing on the Term B Note as of December 31, 2007 is *at least* $96,627.34. As guarantor of the amounts owed by Bayou on the Term B Note, Douglas Lam is also liable to Spring Street for all amounts owed on the Term B Note.

54.     Bayou is in default under the Term C Note because it failed to make the required payments under the Term C Note when due. The Term C Note has been accelerated, and after applying all credits, payments, and offsets, the total principal and accrued interest still due and owing on the Term C Note as of December 31, 2007 is *at least* $55,539.38. As guarantor of the amounts owed by Bayou on the Term C Note, Douglas Lam is also liable to Spring Street for all amounts owed on the Term C Note.

55.     Bayou is in default under the Term D Note because it failed to make the required payments under the Term D Note when due. The Term D Note has been accelerated, and after applying all credits, payments, and offsets, the total principal and accrued interest still due and owing on the Term D Note as of December 31, 2007 is *at least* $40,517.41. As guarantor of the amounts owed by Bayou on the Term D Note, Douglas Lam is also liable to Spring Street for all amounts owed on the Term D Note.

56.     Bayou is in default under the Term E Note because it failed to make the required payments under the Term E Note when due. The Term E Note has been accelerated, and after applying all credits, payments, and offsets, the total principal and accrued interest still due and owing on the Term E Note as of December 31, 2007 is *at least* $28,370.05. As guarantor of the amounts owed by Bayou on the Term E Note, Douglas Lam is also liable to Spring Street for all amounts owed on the Term E Note.

57. Bayou is in default under the Term F Note because it failed to make the required payments under the Term F Note when due. The Term F Note has been accelerated, and after applying all credits, payments, and offsets, the total principal and accrued interest still due and owing on the Term F Note as of December 31, 2007 is *at least* $22,197.98. As guarantor of the amounts owed by Bayou on the Term F Note, Douglas Lam is also liable to Spring Street for all amounts owed on the Term F Note.

58. Bayou is in default under the Term G Note because it failed to make the required payments under the Term G Note when due. The Term G Note has been accelerated, and after applying all credits, payments, and offsets, the total principal and accrued interest still due and owing on the Term G Note as of December 31, 2007 is *at least* $15,313.00. As guarantor of the amounts owed by Bayou on the Term G Note, Douglas Lam is also liable to Spring Street for all amounts owed on the Term G Note.

59. Bayou and Douglas Lam's failures to pay the amounts owed constitute breaches of the Notes and Guaranties. As a direct and proximate result of these breaches, Plaintiff Spring Street has incurred damages *in excess* of $8,559,084.72. The exact amount of Plaintiff's damages will be proven in court.

60. Despite Spring Street's demands for payment from Bayou and Douglas Lam, the amounts owed under the Notes and the Guaranties remain due, owing and unpaid.

### *The Fraudulent Transfers and Scheme to Defraud Douglas Lam's Creditors*

61. On February 10, 2005, Douglas Lam and his sister, Ten Lam, formed LT Seafood, L.P. ("LT"). Upon information and belief, LT is directly adjacent to Bayou and conducts business operations identical to that of Bayou, that is, as a wholesale supplier of fresh seafood. Ten Lam held a 51% interest in LT, while Douglas Lam held a 49% interest in LT.

12

62.    On November 10, 2006, Wachovia (predecessor in interest of the claims of Spring Street against Bayou and Douglas Lam) gave notice of its intent to accelerate and collect upon the obligations owed under the Notes and Guaranties.

63.    A mere ten (10) days later, on November 20, 2006, in what now appears to be an obvious effort to protect his 49% interest in LT from his creditors, as well as his and his wife's personal assets, Douglas Lam and his wife, Diane T. Lam ("Diane Lam") formed DKL&DTL. Upon information and belief, this entity was formed for the sole purpose of hindering, delaying and defrauding their creditors. Upon further information and belief, Douglas Lam and Diane Lam each owned an interest in DKL&DTL.

64.    Between November, 2006 and October of 2007, Douglas Lam conveyed his 49% interest in LT to DKL&DTL. Thereafter, in October 2007, Douglas Lam conveyed his interest in DKL&DTL to his sister for an amount far below the fair value of his interest in LT. Alternatively, through a series of transactions involving Douglas Lam, Diane Lam, other family members and relatives of Douglas Lam, LT and DKL&DTL, Douglas Lam effectuated a transfer of his 49% interest in LT to family members for less than a reasonably equivalent value (all such transfers, together with all other transfers of Douglas Lam's personal assets to DKL&DTL or other affiliated and related persons and entities, the "Transfers"). Upon information and belief, the Transfers were not made in good faith. The Transfers were made with the intent to hinder, delay or defraud Douglas Lam's personal creditors, both present and future. Upon further information and belief, Douglas Lam was insolvent at the time of the Transfers, or otherwise was rendered insolvent by the Transfers. The Transfers were made for less than a reasonably equivalent value.

13

## IV.  NOTICE REGARDING RETENTION OF DOCUMENTS

65.    Spring Street hereby puts each and every Defendant on notice of their need to retain all documents in any way related to (1) any transactions related to the Notes and Guaranties, (2) any other transaction involving any other Defendant, (3) the Transfers and any other transactions between Douglas Lam, Diane Lam, Bayou, LT, other relatives and family members of Douglas Lam, and/or DKL&DTL and (4) Defendants' acts and omissions in connection with the Notes, Guaranties and Transfers.   Specifically, Spring Street puts Defendants on notice that they shall retain, and not destroy any such documents.

## V.  CAUSES OF ACTION

### COUNT I:

### BREACH OF THE GUARANTIES AGAINST DEFENDANT DOUGLAS LAM

66.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 65 as though they were set forth herein.

67.    Defendant Douglas Lam, as guarantor, is obligated to pay all amounts owed on the Revolving Credit Note, the Term A Real Estate Note, and the Term B – G Notes. Defendant's failure to pay these amounts constitutes a breach of the Unconditional Guaranty and the Term B – G Guaranties.  As a direct and proximate result of these breaches, Plaintiff has incurred and will incur actual damages *in excess* of $8,559,084.72 for which Plaintiff now seeks recovery from Douglas Lam.  The exact amount of Plaintiff's damages will be proven in court.

68.    Pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001 *et seq.* and applicable provisions of the Guaranties, Plaintiff also seeks recovery for its attorneys' fees, costs and expenses expended to enforce its rights under the Guaranties.  Plaintiff also seeks recovery for pre- and post-maturity interest and all expenses incurred by Plaintiff by reason of Douglas Lam's default in the payment and performance of their obligations.

## COUNT II:

## FRAUDULENT TRANSFERS PURSUANT TO TEX. BUS. & COMM. CODE § 24.005(A)(1) AGAINST DKL&DTL

69.    Spring Street hereby incorporates and realleges the allegations contained in paragraphs 1 through 65 herein.

70.    Douglas Lam's interests in LT constituted an asset of Douglas Lam.

71.    DKL&DTL was formed, and the Transfers all occurred, on or within four (4) years of the date of the filing of this Complaint.

72.    Douglas Lam formed DKL&DTL and made the Transfers to DKL&DTL, with actual intent to hinder, delay, or defraud his personal creditors whose claims arose before or within a reasonable time after the Transfers were made.

73.    Spring Street may avoid the Transfers to the extent necessary to satisfy its claims under the Guaranties.

74.    Alternatively, Spring Street may recover from DKL&DTL as the first transferees or the persons for whose benefit the Transfers were made, the value of the 49% interest in LT and all other Transfers, or the amount necessary to satisfy Spring Street's claims under the Guaranties.

## COUNT III:

## FRAUDULENT TRANSFERS PURSUANT TO TEX. BUS. & COMM. CODE § 24.005(a)(2) AGAINST DKL&DTL

75.    Spring Street hereby incorporates and realleges the allegations contained in paragraphs 1 through 65 herein.

76.    Douglas Lam's interests in LT constituted an asset of Douglas Lam.

77.    The Guaranties constituted obligations incurred by Douglas Lam.

15

78.    DKL&DTL was formed, and the Transfers all occurred, on or within four (4) years of the date of the filing of this Complaint.

79.    Douglas Lam formed DKL&DTL and made the Transfers to DKL&DTL without receiving a reasonably equivalent value in exchange for the transfers and was engaged or about to engage in a business or a transaction for which the remaining assets of Douglas Lam were unreasonably small in relation to the business or transaction.

80.    Spring Street may avoid the Transfers to the extent necessary to satisfy its claims under the Guaranties.

81.    Spring Street may recover from DKL&DTL, as initial transferee or the entity for whose benefit the Transfers were made, the value of any of Douglas Lam's personal property transferred.

82.    Alternatively, Spring Street may recover from DKL&DTL as the subsequent transferee who did not take for value or in good faith, the value of the 49% interest in LT and all other Transfers, or the amount necessary to satisfy Spring Street's claims under the Guaranties.

## COUNT IV:

### FRAUDULENT TRANSFER PURSUANT TO
### TEX. BUS. & COMM. CODE § 24.006(A) AGAINST AND DKL&DTL

83.    Spring Street hereby incorporates and realleges the allegations contained in paragraphs 1 through 65 herein.

84.    Douglas Lam's interests in LT constituted an asset of Douglas Lam.

85.    DKL&DTL was formed, and the Transfers all occurred, on or within four (4) years of the date of the filing of this Complaint.

86.    Douglas Lam received less than a reasonably equivalent value in exchange for the Transfers.

16

87. Douglas Lam was insolvent at the time the Transfers occurred or became insolvent as a result of the Transfers.

88. Spring Street may avoid the Transfers to the extent necessary to satisfy its claims under the Guaranties.

89. Spring Street may recover from DKL&DTL as initial transferee or the entities for whose benefit the Transfers were made, the value of any of Douglas Lam's personal property transferred.

90. Alternatively, Spring Street may recover from DKL&DTL as the subsequent transferee who did not take for value or in good faith, the value of the 49% interest in LT and all other Transfers, or the amount necessary to satisfy Spring Street's claims under the Guaranties.

## VI. DAMAGES

91. Spring Street's damages include:

    a. loss of the monies loaned to Bayou and guaranteed by Douglas Lam;

    b. loss of personal assets of Douglas Lam from which Spring Street, as creditor, can satisfy Douglas Lam's obligations under the Guaranties;

    c. damages for loss of business reputation and loss of goodwill;

    d. exemplary damages in an amount to be determined so as to deter Defendants from similar future conduct and punish Defendants who benefited from these false representations, all in violation of Tex. Bus. & Com. Code § 27.01(d);

    e. court costs pursuant to Tex. Bus. & Com. Code § 27.01(e); and

    f. reasonable and necessary attorneys' fees pursuant to Tex. Bus. & Com. Code § 27.01(e).

## PRAYER

92.    For all of the foregoing reasons, Spring Street asks that Defendants be cited to appear and answer and, on final trial, Spring Street have judgment against Defendants for the following:

    a.    Actual damages,

    b.    Exemplary Damages,

    c.    Prejudgment and postjudgment interest,

    d.    Costs of suit,

    e.    Attorneys' fees,

    f.    All other relief, in law and in equity, to which Spring may be entitled.

Dated this 8th day of January, 2008.

                                        Respectfully submitted,

                                        VINSON & ELKINS L.L.P.


                                        /s/ Daniel C. Stewart
                                        Daniel C. Stewart
                                        Attorney-in-Charge
                                          State Bar No. 19206500
                                        VINSON & ELKINS LLP
                                        2001 Ross Avenue
                                        3700 Trammell Crow Center
                                        Dallas, Texas 75201-2975
                                        Tel.: 214.220.7761
                                        Fax: 214.220.7761

Of Counsel:

John Mitchell
  State Bar No. 00797095
VINSON & ELKINS LLP
2001 Ross Avenue
3700 Trammell Crow Center
Dallas, Texas 75201-2975
Tel.: 214.220.7766
Fax: 214.999.7766

Robert A. Wilkins
  State Bar No. 24033343
  Southern District Bar No. 37018
VINSON & ELKINS L.L.P.
First City Tower
1001 Fannin, Suite 2500
Houston, TX 77002-6760
Tel.: 713.758.4596
Fax: 713.615.5111

**Attorneys for Plaintiff**
**Spring Street Partners – IV, L.P.**

3491148_1.DOC                           19