| | |
|---|---|
| United States District Court | Southern District of Texas |

Spring Street Partners, §
　　　　Plaintiff, §
 §
versus § Civil Action H-08-107
 §
Douglass Lam, et al., §
　　　　Defendants. §

# Opinion on Summary Judgment

1.　*Introduction.*

　　A company defaulted on a loan and petitioned for bankruptcy. The assignee of the loan says that the company fraudulently transferred assets to avoid paying its debt. Because the company transferred assets outside the ordinary course of business for no consideration, they were fraudulent. The assignee will prevail.

2.　*Chronology.*

　　1994　　*Bayou.* Douglass Lam forms Bayou City Fish Company, Inc., a fish market with retail and wholesale customers. It is located at 415 and 213 East Hamilton. Ten Lam, Douglass's sister, and Vinh Ngo, her husband, are employees.

　　2001　　*Wells.* Douglass forms Wells Star Group, Inc.

　　2005　　*Seafood.* Douglass and Ten form LT Seafood LP. Ten has a 50% interest in it, LT Seafood Management, LLC – a company owned by Ten – has a 1% interest, and Douglass has a 49% interest. Wells leases 415 East Hamilton to Seafood. Wachovia loans Bayou $8.5 million.

2006     *Family.* Wachovia assigns the loan to Spring Street Partners, L.P. Douglass guarantees it. Douglass, Diane Lam, his wife, and his brothers, En Kha Lam and Long Lam, form DKL&DTL Family Management, LLC. They each own 25% of it. Douglass conveys his 49% interest in Seafood to Family.

2007     *JNT.* Douglass forms JNT Group, LLC. Family sells its 49% interest in Seafood to Vinh. Wells sells 415 East Hamilton to JNT. Gold Bank loans JNT $1 million.

3.    *Transfer: Bayou to Seafood.*

Bayou transferred its retail operations to Seafood. Spring Street says that the transfer was fraudulent because Seafood never paid Bayou for it.[1]

Bayou issued a note to Spring Street, and Douglass guaranteed it. Bayou defaulted on the note and petitioned for bankruptcy protection. Spring Street sued (1) Douglass, (2) some of his family members, and (3) Family.

Spring Street says that assets have been fraudulently transferred among:

- Douglass Lam
- Vinh Ngo
- Ten Lam
- Family

Spring Street and the trustee of Bayou's bankruptcy estate have moved for partial summary judgment on the transfers.

A. *Limitations.*

Because Spring Street sued more than four years after Bayou's transfer to Seafood, Seafood and Ten say that the trustee's suit is time-barred.

The trustee's suit is not barred. A trustee may sue to avoid a transfer until two years after the bankruptcy has closed.[2] Because Bayou's bankruptcy is still open, the trustee may still sue Seafood and Ten.

---

[1] Tex. Bus. & Com. Code Ann. § 24.005(a)(2) (1987).

[2] 11 U.S.C. §§ 544(b), 546(a) (2011); Tex. Bus. & Com. Code Ann. § 24.010(a) (1993).

B. *Payment.*

Ten swears to alternative facts. She denies that Bayou transferred anything to Seafood. She also says, however, that if it did transfer something, Seafood paid for the transfer by overpaying Bayou $73,000 for inventory, insurance, and maintenance. Her only proof of this overpayment are rent checks from Seafood to Wells and an illegible slip of paper with random numbers written on it.

Ten cannot swear to contradictory facts. The rent payments from Seafood to Wells covered only Seafood's occupancy of the building. If Seafood had overpaid Bayou, it would have claimed that amount in its bankruptcy. It never did.

Bayou transferred assets to Seafood. Vinh swore that Douglass agreed to transfer Bayou's retail operations to Ten and him. After Bayou filed for bankruptcy, its controller gave the trustee a list of assets that Bayou had transferred to Seafood. These are valued at $150,000. This list – coupled with Vinh's assertion that Seafood was created from Bayou's retail operations – show that Bayou transferred assets to Seafood.

The defendants have no evidence that the transfers from Douglass to his relatives during the bankruptcy had any purpose but to avoid paying his debt.

C. *Remaining Assets.*

The trustee says that after the transfer to Seafood, Bayou's remaining assets could not pay its debts. This is obvious because Bayou combined its financial statements with Seafood to borrow more money from Wachovia. Although Douglass blames this on the bank's accountants – who he says told him to combine the statements – he never gave the bank the two statements or told it to separate them.

Bayou and Seafood told Wachovia that their assets would support the debt repayment. They are stuck with this commitment. When Bayou transferred its assets to Seafood, it made no provision for its creditors – directly or indirectly. The assets Bayou transferred to Seafood stay with Bayou; they belong to its creditors.

4. *Transfer: Douglass to Family.*

On November 10, 2006 – over five months after Bayou had defaulted – Wachovia notified Bayou of its intent to accelerate the loans. On November 20, Douglass, Diane Lam, his wife, and his brothers, En Kha Lam and Long Lam, formed Family – each owning a 25%

interest. In December, Douglass began transferring many of his assets – including his 49% interest in Seafood – to Family. Spring Street says that because Family did not pay Douglass, he is entitled to the value of the transfer.

A debtor may not transfer assets outside the ordinary course of business for the benefit of family members for no consideration when his remaining assets are unreasonably small to pay his debts.[3]

### A. Charter Revocation.

Family says that this court cannot enter judgment against it because the Texas Secretary of State revoked its charter.

When a company owes a debt and its charter has been revoked, its shareholders are personally liable for the debt.[4]

After the revocation of its charter, Family lost the privilege of defending itself. It does not have immunity from suit. Both Family and its shareholders are liable for their debt.

### B. Payment.

Douglass says that he transferred the assets to Family as a gift to protect them for his children. He confesses what the law forbids – preference of family to creditors.

Family did not pay Douglass for the assets, and they were not transferred in the ordinary course of business. After the transfer, Douglass did not pay his debt to Spring Street. The value of the assets that Douglass transferred to Family must flow back through him.

5.  Transfer: Family to Vinh.

In November of 2007, Family transferred its 49% interest in Seafood to Vinh. Spring Street says that Vinh did not pay for this interest. Vinh says that he and Ten, his wife, formed JNT Group, Inc., and paid Douglass $1.25 million for both the 49% interest and the 415 East Hamilton property where Seafood is located. Douglass says that after paying his loan on the building, Vinh paid him the remaining $350,800 for the 49% interest.

---

[3] Tex. Bus. & Com. Code Ann. § 24.005(a)(2) (1993).

[4] Tex. Tax Code Ann. § 171.255. (1982).

The defendants have offered little evidence of Vinh's payment and Douglass's receipt. Vinh and Douglass say that these documents show a transaction between JNT and Wells – owned by Douglass:

- A $1 million promissory note from JNT to Golden Bank;
- A bank statement for Wells showing two deposits for $350,803;
- Checks from Vinh to Wells and others; and
- A settlement statement showing a $1.25 million payment from JNT to Wells for the property.

These documents do not prove that Vinh paid Family or that JNT paid Wells for the 49% interest. Rather, they establish that Golden Bank agreed to loan JNT $1 million for the purchase of the East Hamilton property and that JNT paid Wells $1.25 million for it. At most, this is a transaction between Douglass, Ten, and Vinh to purchase the property.

The value of the 49% interest in Seafood remains with Douglass; its value belongs to his creditors.

6. *Conclusion.*

Spring Street says that Douglass Lam is liable under legal theories of fraudulently transferred assets, single business enterprise, joint venture, joint enterprise, and partnership.

Bayou, Douglass, and Family transferred assets outside the ordinary course of business for zero consideration and have lied about it ever since. As the recipients of these transfers, Seafood, Family, Ten, and Vinh will return the value of the transfers to Bayou and Douglass for the benefit of Bayou's and Douglass's creditors.

Seafood is also liable for representing to Wachovia that it and Bayou were the same entity by combining their financial statements and maintaining the same address.

Signed on December 17, 2011, at Houston, Texas.

Lynn N. Hughes
United States District Judge